UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

FREDERICK WELLS                                                                              PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:20-CV-40-DPJ-FKB

PELICIA HALL, et al.                                                                        DEFENDANTS

ORDER

In August of 2019, Frederick Wells was a state inmate housed at the Central Mississippi Correctional Facility. During the late hours of August 30 and the early morning hours of August 31, officers at the facility conducted a shakedown of D zone in building B after inmates complained of conditions and demanded to see the warden. Wells brought this action pursuant to 42 U.S.C. § 1983, alleging that during these events he was subjected to excessive force by Officers Tyler Smith, Lacedrick Fletcher, and Carl Arnold. He also claims that Warden James Fillyaw oversaw and directed the use of excessive force. Before the Court is the motion of Defendants Smith, Fletcher, and Fillyaw for summary judgment [51].[1] For the reasons explained, the Court finds that the motion should be granted in part and denied in part.

I.      Factual Background

    A.      Plaintiff's Version of the Events

Plaintiff's version of the events, set forth in his verified complaint [1] and in his omnibus hearing testimony [51-1], is taken as true for the purposes of the motion. Plaintiff alleges that

---

[1] Defendant Arnold was initially represented by counsel for MDOC, who answered on his behalf. Subsequently, counsel filed a motion to withdraw, explaining that Arnold had been charged with embezzling from MDOC and the Attorney General was statutorily prohibited from representing a person charged with a crime. By Order [35] dated December 2, 2020, the Court granted the motion. The Court gave Arnold 30 days to either secure representation or inform the Court that he intended to proceed pro se. Arnold never responded to the Order.

late in the evening of August 30, 2019, he and two other inmates on D zone approached the tower officers and asked to speak to Warden Fillyaw concerning restrictions on inmates. The three inmates were taken from the zone to a foyer area. A few minutes later, Warden Fillyaw and other officers, including Smith, Fletcher, and Arnold, entered the foyer, ordered the three inmates to strip naked, handcuffed them, made them crawl on their stomachs on the floor "like a worm," kicked them, and beat them. Transcript [51-1] at 15. Plaintiff says that he was kicked in the head and back by Smith, Fletcher, and Arnold. He does not contend that Fillyaw struck him, but he alleges that Fillyaw was present and directed the use of force.

During this time, prison officers also began pulling other inmates from the zone into the foyer area. Ultimately, they conducted a strip search of all the inmates in the zone and a shakedown of the unit, during which Plaintiff and other inmates remained face down on the foyer floor. Later, Plaintiff and other inmates who were considered instigators of the "trouble" were forced to walk outside—naked and barefoot—to another building. Plaintiff says that the road on which they were forced to walk was paved with sharp gravel and that walking over it was painful.

Plaintiff was ultimately placed in lockdown and received a Rule Violation Report for shoving past an officer and inciting a riot. He claims that sometime during the evening's events he sustained an injury to his toe, although he does not attribute it to any direct use of force. Plaintiff does not allege any bruising or lasting injuries from being kicked, hit, or from walking barefoot on the gravel.

B. Defendants' Version of Events

In support of their motion, Defendants have submitted affidavits, medical records, and surveillance videos.[2] In their affidavits [51-4, 51-5, 51-6], they describe a situation in which Plaintiff and others instigated an uprising in the zone, necessitating the strip searches and shakedown that followed. Each Defendant specifically denies having used any force at all on Plaintiff.

As for the surveillance videos, the first, labeled Quick Bed Video 1, covers approximately one hour, from 11:00 p.m to midnight. It consists of four camera angles and shows the interior of D zone and the foyer. At 5:25 of the video, three inmates come out from D zone into the foyer. Officers then enter the area. One of the inmates lies on the floor, while the other two remain standing and engage in an animated conversation with officers. The conversation lasts for approximately five and a half minutes. Several of the officers come and go, with the last leaving the foyer area at 13:34. From then until the end of the video, the three inmates appear to be alone in the foyer and can be seen walking, sitting, pacing, and communicating with inmates through the door to the zone. At times they walk out of the field of view.

The second video, labeled with the final designation of 508 F, begins at midnight and lasts approximately one hour and ten minutes. It consists of three camera angles and shows the same foyer area and a view inside the zone. The three inmates are still in the foyer area and ultimately lie down on the floor. At 8:08, several officers enter the foyer and have the three inmates strip and lie face down on the floor. At least one inmate is shown being handcuffed with

---

[2] The term "Defendants" is used in this order to refer to the three defendants who have filed the present motion.

his hands behind his back. Officers then go into the zone and begin pulling other inmates out and onto the floor. At 12:10, the officers direct the three stripped inmates to scoot away from the door to the zone. These inmates move out of the field of view at 12:52 and are no longer visible. The remainder of the video shows officers bringing more inmates out into the foyer and requiring the remaining inmates in the zone to strip off their clothing. Eventually all of the inmates in the zone, as well as many from areas not on camera, are brought out through the foyer.[3]

These videos are not accompanied by an affidavit explaining the events or identifying any of the officers or inmates shown in them. The most that can be inferred by the Court from the parties' filings is that Plaintiff is one of the three inmates who come out of D zone into the foyer in the first video and who are required to strip and to lie face down on the floor in the second video.

Finally, the medical records attached to Defendants' motion include notes from Plaintiff's visit to the medical unit shortly after the alleged use of force and prior to his placement in lockdown. The notes from this visit indicate that he denied any injuries. Records [58] at 1. But a body sheet prepared at the time shows swelling of the knees and possibly the elbows and some injury to a toe or foot. *Id.* at 4.

II.  Official-Capacity Claims

To begin, Defendants correctly argue that the claims advanced against them in their official capacities are due to be dismissed based on sovereign immunity, Eleventh Amendment

---

[3] A third video, labeled with the final designation of 6 AF, shows a different area. It lasts for approximately eight minutes and shows several inmates being led from one area to another. The Court is unable to determine the relevancy of this video.

immunity, and the "person" requirement of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding a State is not a "person" within the meaning of § 1983"); *id.* at 71 (noting a suit against a state official in his official capacity is "no different from a suit against the State itself"); *see also Towns v. Miss. Dep't of Corr.*, No. 4:19-CV-70-SA-JMV, 2020 WL 1249904, at *6 (N.D. Miss. Mar. 16, 2020) ("Because MDOC and the official capacity defendants are 'arms of the state' for Eleventh Amendment purposes and no exception to Eleventh Amendment immunity is applicable, [Plaintiff's] claims against these defendants must be dismissed.").

III.     Individual-Capacity Claims:  Qualified Immunity

Defendants have asserted the defense of qualified immunity. A qualified immunity analysis consists of two prongs:  (1) whether the official's conduct violated a constitutional right, and (2) whether the right was clearly established at the time. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A.     First Prong

The Court begins with whether Plaintiff's evidence, taken as true, establishes a constitutional violation. In determining whether Plaintiff has established an Eighth Amendment excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In determining whether force was applied with an intent to cause harm, and was therefore excessive, a court may consider the extent of injury suffered, the need for the use of force, the relationship between the need and the amount of force used, the

threat reasonably perceived by the prison officials, and any efforts made to temper the severity of the force. *Id.*[4]

        1.        Allegations that Fall Short of Excessive Force

Assuming as true Plaintiff's allegations that he was made to crawl on the floor while naked and handcuffed, these facts fail to rise to the level of excessive force. Furthermore, it is clear from the video that the officers were managing a large number of prisoners and at times needed to move some inmates out of the way of other inmates.[5] To the extent these actions could be characterized as a use of force, there is no evidence that they were taken for any reason other than to maintain order. Plaintiff's allegations concerning his walk on gravel fail for the same reason. There is no allegation or evidence of any injury caused by sharp gravel, nor is there any evidence that Plaintiff was made to walk on gravel for any reason other than for transfer to another building.

        2.        Kicking and Beating by Smith and Fletcher

Plaintiff's allegation that Defendants Smith and Fletcher kicked and beat him is a different matter. Plaintiff contends that he was beaten while lying face down on the floor and wearing restraints. The videos submitted by Defendants do not exclude this possibility. In the videos there are substantial periods of time during which some or all of the three inmates, of which Plaintiff is presumably one, are out of camera view. Furthermore, it is difficult to imagine a scenario in which the kicking and hitting of an inmate who is restrained, passive, and lying face

---

[4] Had these claims survived the first prong, they would have failed the second.

[5] It seems probable that Plaintiff's allegations in this regard are reflected in that portion of the second video in which the officers require the three inmates to scoot across the floor away from the zone doorway.

down on the floor could be for any purpose other than to cause harm, and Defendants have alleged no facts providing any justification for such an act.

The Court recognizes that the absence of any signs of injury to Plaintiff tends to prove that he was not beaten severely. But absence of serious injury is only one factor when determining whether excessive force was used. Where a prisoner or detainee is posing no threat, even a small amount of force that causes only pain, if used with malicious intent, can rise to the level of a constitutional violation. *See Wilks v. Watson*, No. 3:13-cv-688-DPJ-FKB, 2015 WL 728343, at *4 (S.D. Miss. Feb. 19, 2015) (finding Plaintiff's testimony that officer choked him for no reason, where only injury was gasping for air, sufficient to withstand motion for summary judgment). The Court concludes that, given the wholly divergent accounts of what happened, Plaintiff's sworn allegations create a genuine factual issue whether Defendants Smith and Fletcher used excessive force against Wells by kicking and hitting him.

### 3. Warden Fillyaw

Plaintiff alleges that in using excessive force against him, Smith and Fletcher acted at Warden Fillyaw's direction and that Fillyaw was present and oversaw their actions. Plaintiff has not come forward with any evidence that Fillyaw instructed Smith and Fletcher to use force against Plaintiff. But if Fillyaw was present and knew that Smith and Fletcher were using excessive force against Plaintiff, and if he had a reasonable opportunity to prevent the constitutional violation, his failure to intervene would violate the constitution. *See Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (affirming finding that material factual dispute existed on bystander liability). Accordingly, the Court finds that there is a genuine issue of material fact as to whether Fillyaw violated Plaintiff's constitutional rights by failing to intervene.

B.     Second Prong

The second prong of the qualified immunity analysis requires the Court to consider whether Defendants' actions were objectively unreasonable in light of clearly established law. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).  A defendant's actions are "objectively unreasonable" if "the contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.*

As noted, Plaintiff says Defendants kicked and struck him while restrained, passive, and posing no threat.  The Court is persuaded that any reasonable officer would have known that he could not kick or strike a defenseless prisoner lying face down on the floor in restraints.  Furthermore, any officer observing such actions—particularly a supervising officer—who was capable of intervening would have known that he was required to do so.  *See Hamilton*, 845 F.3d 659, 664 (describing as clearly established the law of bystander liability for excessive force).

Assuming Plaintiff's facts are true—as the Court must under Rule 56—the constitutional rule prohibiting the use of force solely for the purpose of causing harm applies "with obvious clarity to the specific conduct in question."  *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *cf. Fairchild v. Coryell Cnty, Tex.*, 40 F. 4th 359, 368 (5th Cir. 2022) (stating in a case involving a pretrial detainee that "[w]ithin the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable") (quoting *Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021)).  Accordingly, Plaintiff's sworn statements are sufficient to establish a violation of clearly established law.

8

III.     Conclusion

The Court has considered all arguments raised; those not addressed would not have changed the result.  For the reasons stated, Defendants' motion is denied as to Plaintiff's claim that he was subjected to excessive force by being kicked and hit by Defendants Smith and Fletcher and by Fillyaw's failure to intervene.  All other claims are dismissed.

The Court finds this matter should be set for a jury trial to occur during the May 15, 2023 two-week trial calendar.  A pretrial conference will be held on April 14, 2023, at a time to be determined; during the pretrial conference, a firm trial date will be set based on the parties' availability.

If counsel for Defendants has a conflict with the pretrial conference setting, they should contact Courtroom Deputy Shone Powell.

**SO ORDERED AND ADJUDGED** this the 3rd day of April, 2023.

                                                                  s/ *Daniel P. Jordan III*                          
                                                                  CHIEF UNITED STATES DISTRICT JUDGE